**CHAHOON v. HICKEY, Collector of Internal Revenue.**

**Civ. No. 1500.**

**District Court, N. D. New York.**

**Dec. 28, 1944.**

Laurence Graves, of New York City, for plaintiff.

Irving J. Higbee, U. S. Atty., of Syracuse, and Samuel O. Clark, Jr., Asst. Atty. Gen. (Andrew D. Sharpe and Frederic G. Rita, Sp. Assts. to the Atty. Gen.), for defendant.

BRYANT, District Judge.

This is a suit for the recovery of $11,311.45 alleged to have been collected from the taxpayer as income taxes for the year 1936.

Question Presented.

Was the taxpayer, in computing his income taxes for the year 1936, entitled under Section 23(e) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 23(e), to deduct from gross income as a loss an amount paid by him to indemnify a bank, of which the taxpayer was president, a stockholder and a depositor personally and through several corporations owned or controlled by him, against loss through shrinkage in value of securities held by it?

Findings of Fact.

1. I. Hasbrouck Chahoon, plaintiff herein, is, and at the time this action was instituted was, a resident of Ausable Forks, New York, and, on March 15, 1937, filed his federal income tax return for the calendar year 1936 with the Collector of Internal Revenue for the Fourteenth District of the State of New York at Albany, New York.

2. The defendant, Harry M. Hickey, is, and at all times herein mentioned was, the United States Collector of Internal Revenue for the Fourteenth District of the State of New York.

3. After the plaintiff's 1936 federal income tax return was filed with the defendant, the Commissioner of Internal Revenue of the United States determined a deficiency in income tax for said year in the amount of $11,311.45, whereupon the plaintiff filed a waiver of his right to appeal to the United States Board of Tax Appeals and consented to the immediate assessment of the deficiency; the Commissioner then assessed the said deficiency together with interest in the amount of $1,279.59, all of which the plaintiff paid to the defendant on February 8, 1939, in a total sum of $12,591.04.

4. On February 6, 1941, the plaintiff filed with the defendant a claim for refund in the amount of $11,311.45 and $1,279.59, paid as aforesaid. Plaintiff was advised by letter received by registered mail from the office of the Commissioner of Internal Revenue, dated March 2, 1942, that said claim for refund was disallowed in full. This suit was brought on February 29, 1944.

5. At all times here material, the plaintiff was president of the Plattsburg National Bank and Trust Company, Plattsburg, New York, the largest bank in the Adirondack area consisting of Franklin, Clinton and Essex Counties, with deposits of approximately $10,000,000, or about one-third of the total deposits of all the banks in this area. Plaintiff's salary was $10,000 per annum until January 1, 1934, when it was reduced to $5,500. He was president of J. & J. Rogers Company, a corporation

engaged in the manufacture of sulphide pulp and paper at Ausable Forks, New York, from which he received a salary of $12,000. This corporation, which was principally owned by the members of his family, had gross assets in excess of $2,000,000 and employed about 350 people out of the total population of Ausable Forks which was between 1,200 and 1,300. He owned one-third of the capital stock and was an officer and director of Ausable Credit Corporation, also of Ausable Forks, from which he received a salary of $3,000. This corporation was principally engaged in financing the purchase of automobiles and refrigerators sold in the surrounding communities with assets in excess of $500,-000 consisting of notes receivable on installment sales. He received a salary of $1,000 from Northern Insuring Agency, Inc., of which he was a stockholder, director and vice president. This corporation had offices in Ausable Forks and Plattsburgh. He was a stockholder, director and president of Adirondack Corporation, Ltd., with assets in excess of $800,000. More than 66% of the preferred stock of this corporation was owned by the members of his family and the entire common stock was owned by the J. & J. Rogers Company. He owned one-seventh of the capital stock and was an officer and director of Chazy Orchards Company, Inc., of Chazy, New York, which owned and operated one of the largest apple orchards in the world. He was also a member of the Board of Managers of Delaware & Hudson Railroad Corporation, for which he received a salary of $240 per annum.

6. The years 1930 and 1931 were hazardous ones in the banking business. Many banks throughout the nation were forced to close. In New York State thirty (30) National Banks were closed in 1930 and two hundred and thirty (230) were closed in 1931. In Clinton County two banks were closed by the Comptroller of the Currency. The Plattsburg National Bank and Trust Company (referred to herein as the Trust Company) took over the assets and liabilities of the First National Bank of Plattsburg in order to prevent its formal closing. It also gave financial assistance in the re-organization of another Plattsburg bank, the Merchants National Bank and Trust Company.

7. The representatives of the Comptroller of the Currency of the United States made a report of the condition of the Plattsburg National Bank & Trust Company, dated July 17, 1931, which disclosed the following facts:

| | | |
|---|---|---|
| Bond depreciation | $444,103.11 | |
| Losses | 34,732.50 | $478,835.61 |
| Depreciation on bonds taken over by Trust Company from First National Bank | | 321,606.51 |
| Total losses and depreciation | | $ 800,442.12 |
| Capital & surplus of Trust Company before adjustment for bond losses and depreciation: | | |
| Capital stock | $500,000.00 | |
| Surplus | 750,000.00 | |
| Profit and loss | 7,905.88 | |
| Reserves | 2,726.25 | |
| Total | | 1,260,632.13 |
| Net capital after bond depreciation and losses | | $ 460,190.01 |
| Further estimated losses on loan accounts: | | |
| Doubtful | $ 98,197.82 | |
| Losses | 8,030.00 | 106,227.82 |
| Net capital after estimated losses | | $ 353,962.19 |

8. Plaintiff and the other officers and directors of Plattsburg National Bank & Trust Company were informed by the Comptroller of the Currency that this situation must be remedied or that the Plattsburg National Bank & Trust Company would be closed. Numerous conferences were held in New York City with representatives of the Comptroller of the Currency. The solution which was finally worked out was incorporated in two agreements executed on September 28, 1931. The effect of these agreements was that the plaintiff and the other subscribers to them agreed to indemnify the bank against loss on the sale of its bonds to the extent of $400,000, the difference at the time between

the market value of the bonds and their cost to the bank. The agreements provided, however, if the sale of the bonds resulted in a profit, the profit was the bank's and not the subscribers. Under the agreements, the plaintiff made himself liable to the extent of $100,000 and delivered his note for that amount.

9. At the time the said agreements were entered into the plaintiff owned 148 shares of the stock of the Trust Company out of a total of 5,000 outstanding. The corporations in which he and his family were vitally interested and from which he was receiving substantial salaries, had deposits with the Trust Company totalling $256,555.-59.

10. In 1936, the plaintiff and the other subscribers to those agreements were required to make good the difference between the cost and the then market value of the bonds. The plaintiff's liability under the agreements was determined to be $48,000 which he paid in cash in that year.

11. In plaintiff's income tax return for the year 1936, the plaintiff took this $48,000 as a deduction from gross income.

12. At all times herein mentioned plaintiff was actively engaged in business. He was constantly engaged in management and activities of corporations in which his capital was invested. He drew salaries from the Trust Company and other above mentioned corporations. Under the circumstances, his participation in the agreement was a normal business transaction, made to protect his extensive interests and substantial salaries in the various corporations, particularly the Trust Company.

13. The payment of $48,000, pursuant to said contracts, was both an ordinary and necessary expense incurred by plaintiff in carrying on his business and a loss incurred in his trades or businesses.

### Conclusions of Law

1. Plaintiff is entitled to the deduction of $48,000, made in his 1936 return, either as a necessary business expense or a business loss, under Sec. 23(e) of the 1936 Revenue Act, 26 U.S.C.A. Int.Rev.Code, § 23(e).

2. Plaintiff is entitled to judgment against defendant for the amount demanded in the complaint.